IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LIEUTENANT PEDRO J. LAMBOY-ORTIZ and IDALIA FIGUEROA-VELEZ, their conjugal partnership and as parents representing their disabled children Wilmer Lamboy-Figueroa and María A. Lamboy-Figueroa; and SERGEANT ROBERTO FIGUEROA-MONTALVO and PURA VEGA-PABON, their conjugal partnership and their daughters ELIZABETH FIGUEROA-VEGA and LISBETH FIGUEROA-VEGA <br><br> Plaintiffs <br><br> vs. <br><br> HON. MIGUEL PEREIRA, in his personal capacity as former Superintendent of Police of Puerto Rico; <br> HON. VICTOR RIVERA in his official capacity as Superintendent of Police of Puerto Rico; <br> HON. MIGUEL G. ORTIZ-VELEZ in his personal capacity and in his official capacity as Mayor of the Municipality of Sabana Grande; <br> POLICEWOMAN MARISOL VARGAS-SANTIAGO, in her official capacity as Officer of the Police of Puerto Rico; <br> COLONEL CESAR GRACIA-ORTIZ, in his personal capacity and in his official capacity as Assistant Superintendent of the Police of Puerto Rico; <br> POLICEMAN JOSE SANTANA-PEREZ, in his personal capacity and in his official capacity as member of the Police of Puerto Rico; <br> LIEUTENANT EMIGDIO LABOY-CASTILLO, in his personal capacity and in his official capacity as Police Commander of the Police of Puerto Rico in Sabana Grande; and employees, officers or agents of the Police Force of Puerto Rico or of Puerto Rico or of any other Governmental Puerto Rican Position related, depriving or cooperating to deprive plaintiffs of their constitutionally protected rights; PERSONS A TO Z UNTIL NOW UNKNOWN <br><br> Defendants | CIVIL 02-2848CCC |

CIVIL 02-2848CCC                                         2

## OPINION AND ORDER

This is an action filed by two police officers, Lieutenant Pedro J. Lamboy-Ortíz (Lamboy) and Sergeant Roberto Figueroa-Montalvo (Figueroa), for violation of their First Amendment rights due to political discrimination and due process violations which allegedly occurred during the administrative procedures related to disciplinary charges and the related criminal process.[1] Upon the conclusion of plaintiffs' evidence, which included the testimony of defendants Miguel Pereira (Pereira), former Superintendent of the Police of Puerto Rico, Miguel Ortíz-Vélez (Ortíz), Mayor of the Municipality of Sabana Grande, police officer Marisol Vargas-Santiago (Vargas), Colonel César Gracia-Ortíz (Gracia), and Lieutenant Emigdio Laboy-Castillo (Laboy), defendants filed motions under Fed.R.Civ.P. 50(a)(1) (**docket entries 216, 217 & 218**), which plaintiffs opposed (**docket entry 222**). Defendants' common argument is that there is no evidence that plaintiffs' political affiliation was a substantial or motivating factor for the employment actions taken against them or that agent Vargas' charges of misconduct, which triggered the personnel decisions, were brought for some reason connected to their political affiliation. These charges were based on what Vargas perceived as offensive remarks to her, to other female and male officers and to then Governor Calderón purportedly made by plaintiffs on

---

[1] Since the inception of the case, the Court has disposed of the following claims originally raised by the plaintiffs: the claim for punitive damages against the Municipality of Sabana Grande and its Mayor, Miguel G. Ortíz-Vélez in his official capacity (docket entry 39), the claims under the Fourth Amendment (docket entry 47), the claims against co-defendant José Santana (docket entry 53), the claims under Puerto Rico Law 100 (29 L.P.R.A. §151) against the Municipality and the Mayor in his official and personal capacities (docket entries 111 & 137) and against defendants Miguel Pereira, Víctor Rivera, Marisol Vargas-Santiago, César Gracia-Ortíz, Emigdio Laboy-Castillo (docket entry 136), and the due process claims against the Municipality and the Mayor (docket entry 119). Thus, the remaining claims are for political discrimination under the First Amendment against defendants Miguel Pereira, former Superintendent of the Police of Puerto Rico, Miguel Ortíz-Vélez, Mayor of the Municipality of Sabana Grande, police officer Marisol Vargas-Santiago, Colonel César Gracia-Ortíz, and Lieutenant Emigdio Laboy-Castillo, and for alleged violations of the Due Process Clause against defendants Laboy, Gracia and Pereira.

CIVIL 02-2848CCC                                     3

December 15, 2001.  Plaintiffs' opposition essentially mirrors their amended complaint[2] regarding allegations that Vargas' charges were fabrications and part of a political ploy between her and the other defendants to oust plaintiffs from their positions in the Police of Puerto Rico. Plaintiffs have sprinkled their arguments with allegations of conspiratorial acts by the several defendants, placing the Mayor of Sabana Grande as the key player in the fabrication of these charges.

The entire case-in-chief revolves around the December 15, 2001 incident at the police station in Sabana Grande, Puerto Rico.  On that date, agent Vargas, an officer who had worked in the Sabana Grande police district for ten years, had been supervised by plaintiff Lamboy for approximately five to six years and by plaintiff Figueroa for approximately two years, was doing the 4:00 A.M.-12:00 noon shift as desk sergeant.  According to her testimony, close to 11:00 A.M. she received a call from Mayor Ortíz inquiring who was the supervisor because he wished to send a portrait of Governor Calderón to the police station.  According to Vargas' testimony, as corroborated by police officers José Santana (Santana) and Efraín Mercado (Mercado), she informed the Mayor the she would send a patrolman.  Officer Santana testified that around 11:00 AM agent Vargas contacted him through the car radio while he was on patrol with officer Mercado and instructed him to go to city hall because someone would be sending some property to the Sabana Grande headquarters.  As instructed, he and Mercado drove to city hall where they were met in front by Vice-Mayor Noel Matías who gave them a photo of Governor Calderón to be placed where governors' portraits are hung.  They took it to the station and Mercado placed it on the wall.  Although there are differing versions as to who said what thereafter, it is undisputed that agent Vargas filed administrative charges against both plaintiffs and that her allegations also triggered the filing of criminal charges against them based on her version of what

---

[2] The Court notes that plaintiffs' amended complaint includes allegations of police brutality and deprivation of liberty (¶ 2), severe physical harm (¶ 32), medical treatment for severe contusions and lacerations all over their bodies and over two weeks of severe pains allover their bodies (¶ 34), and suffering a beating (¶ 35), which must have been taken from a totally unrelated case since there is absolutely no evidence of physical injuries or of arrests in this case.

CIVIL 02-2848CCC                              4

occurred on the morning of December 15, 2001 at the police station. Plaintiffs' Exhibits 1 and 8, the criminal complaints filed against Lamboy and Figueroa, charge as follows:

> . . . illegally . . . [while] being a person performing a trust position, Assistant Commander in the Sabana Grande District, incurred in a voluntary omission of his duty to maintain order and respect at the Police Station of Sabana Grande, by failing to take corrective and necessary measures to have the personnel under his supervision stop using a profane and offensive language against male and female agents of the Puerto Rico Police and the Hon. Governor of Puerto Rico, doña Sila María Calderón, by allowing Sgt. Roberto Figueroa-Montalvo to indicate that the male agents were a bunch of cuckolds, that female officers were a bunch of whores and that the Hon. Governor was a whore and he did not comply with his duty as a Lt. in charge of the District that day. A fact against the law.

Plaintiffs' Exhibit 1, criminal complaint against Lamboy.

> . . . illegally . . . disturbed the peace and tranquility of Police Woman Officer Marisol Vargas-Santiago who was working as duty officer and radio operator in the 4:00 A.M. to 12:00 noon, consisting in the use of offensive, rude and lacking decorous language referring to fellow Police Officers (male and female), and against the Hon. Governor of Puerto Rico, doña Sila María Calderón, saying: "that male Police Officers were a bunch of cuckolds, that whenever they would leave their homes to go to work, their wives at home, who were a bunch of whores were nailed (sic) and the Governor of Puerto Rico, was a whore referring to her photograph that was being placed on that day at the Sabana Grande Police Station, for which she felt upset and offended. A fact contrary to law.

Plaintiffs' Exhibit 8, criminal complaint against Figueroa.

These two complaints were filed by First Lieutenant Emigdio Laboy, upon information and belief, based on agent Vargas' allegations. Although Laboy was not present at the police station on December 15, 2001, he was assigned as the initial investigator of these events by Inspector Julio Rosado on December 18, 2001. Lt. Laboy interviewed and took sworn statements of Vargas, Lamboy, Figueroa and other witnesses as part of the administrative investigation and consulted District Attorney Alma Méndez prior to submitting the case before Municipal Judge Rojas for a probable cause determination. Plaintiffs and defendants have described the different stages of the disciplinary proceeding starting with the initial investigation conducted by Laboy and meandering through different stages of review. These included an administrative evidentiary hearing where both plaintiffs were represented by counsel which resulted in a report issued by the Public Integrity Division that was forwarded to the Legal Division of the Puerto Rico Police Department. The evidence was again assessed and a recommendation made to the Police

CIVIL 02-2848CCC                                        5

Superintendent by his legal advisors.  Plaintiffs were warned of their rights to request further review at each of the different levels in which a recommendation was made regarding disciplinary action.  See e.g. Exhibits B, H & K.  Superintendent of Police Pereira sent each of the plaintiffs letters of summary suspension of employment with a declaration of his intention to decree their expulsion from the force.  See Plaintiffs' Exhibits 7 & 18.  These letters included a narrative of the evidence gathered during the disciplinary hearings, findings of fact regarding the alleged infringements of the personnel regulations of the P.R. Police, and clear warnings of their right to request a further administrative hearing before an examining officer within fifteen (15) working days from receipt of the summary suspension of employment letter and of their right to appeal before the Commission of Investigations, Processing and Appeals (CIPA) within thirty (30) days from notification of the final resolution should they waive their right to the prior administrative hearing before the examining officer.  Upon conclusion of plaintiffs' evidence in this case, their appeals on the administrative suspension were still pending before CIPA.  We note that, subsequent to Superintendent Pereira's letter of summary suspension with intent to expel, Superintendent Víctor Rivera-González, his successor, modified the penalty imposed by reducing it to a five-month suspension without pay.[3]  Regarding the criminal charges, after probable cause was found by Municipal Judge Rojas against the two plaintiffs for the offenses charged, they were tried and acquitted.

       The guideposts that rule our analysis of plaintiffs' evidence are bedrock law.  To prevail on a claim of political discrimination under the First Amendment, a plaintiff initially bears the burden

> . . . of producing sufficient evidence, whether direct or circumstantial, that []he engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action.  The plaintiff must point to evidence on the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.

---

[3] This is the administrative sanction which is presently on appeal.

CIVIL 02-2848CCC                                        6

González-de-Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004) (citations omitted). See also Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 47 (1st Cir. 2004).

    The Due Process Clause, in turn, normally requires notice and an opportunity for some kind of hearing prior to a final deprivation of liberty or property, Parratt v. Taylor, 451 U.S. 527, 540, 101 S.Ct. 1980 (1981), but whether the opportunity needs to be furnished before or after the deprivation depends on the circumstances.  While, when feasible, the opportunity is expected to be pre-deprivation, see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487 (1985), post -deprivation opportunities are also sufficient when "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process [is] coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking...." Parratt, 451 U.S. at 539, 101 S.Ct. 1908.

    The Court has carefully reviewed all of the documentary and testimonial evidence submitted in support of plaintiffs' claims.  There is no evidence whatsoever that agent Vargas acted either prompted or influenced by the Mayor or by any of her superiors in the Puerto Rico Police Department, or that they combined and agreed to further a scheme against plaintiffs because of their political affiliation and that, as part of this, Vargas lent herself as an instrument for the fabrication of trumped-up charges in order to oust plaintiffs from their positions.  Other than the call that the Mayor made to the Sabana Grande police station on December 15, 2001 to request that someone be sent to city hall to pick up a portrait of the governor to hang at the station, there is no evidence that the Mayor participated in any manner in the events that unfolded subsequent to said call.  There is not even evidence that his call was meant for Vargas. She happened to answer it as any officer on duty could have.

CIVIL 02-2848CCC                             7

Plaintiffs' witness Abraham Báez-Martínez testified during his deposition on October 9, 2003[4] that the Mayor, using a loudspeaker, had made statements which he understood had to do with a visit by the New Progressive Party gubernatorial candidate to the Sabana Grande police station. The statements attributed to the Mayor are the following:

> Among other things he said, "That the Sabana Grande police those that were there present, knowing that they were violating the regulations, would abandon the street to accompany a politician inside the police station. That those were faults that had to be corrected and that he was going to make the cleanup."
>
> Deponent then added that the Mayor named Sergeant Figueroa who was the supervisor that was present at said meeting. After making these statements he marched on.

Taking these statements as actually having been made by the Mayor, the fact remains that there is simply no evidence connecting them or actions by the Mayor or decisions by the Municipality to the filing of charges by Vargas or to the personnel actions stemming from those charges that were taken by the Superintendent of the Puerto Rico Police. Cf. González-Pina v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005) (municipal employee failed to establish that any adverse employment action taken against him was motivated by mayor's political animus, where employee failed to link mayor to any alleged discriminatory practices).

At the end of plaintiffs' evidence, all there is to support the political discrimination claims against the Mayor and the Municipality is speculation piled upon speculation that, because the Mayor was an influential political figure, he must have caused agent Vargas to file the charges that ultimately resulted in their suspension without pay. Plaintiffs' trial evidence remained at the same level of conjecture and murkiness as their paragraph 16 of the amended complaint where, using strained and tortured language, they claimed the words of a news article about plaintiff Lamboy were similar to those used by the Mayor in his campaign messages in order to imply that he wrote it or caused it to be written:

---

[4] Relevant excerpts of his deposition were allowed as trial evidence due to Mr. Báez-Martínez' health condition. See Minutes of Proceedings dated June 13, 2005 (docket entry 209).

CIVIL 02-2848CCC                                8

16. On the week before December 15, 2001 there were several "planted" anonymous and slanderous attacks on the newspaper El Vocero against L, accusing him of having a girl friend and that he had a problem with his wife. That was false. But it was using words similar as the ones used by the Mayor of Sabana Grande in his political rallies through the radio. There are some 16 audiotapes of the Mayor Ortíz-Vélez where he and his close followers use the same type of words and strategy to attack their political adversaries. It is evident that it was the Mayor of Sabana Grande, for his promises during the political campaign to oust Plaintiffs from Sabana Grande, his political muscle as the PPD principal leader in the western part of the Island, his influence with the press and through state officers of the PPD; from an objective evaluation and analysis of the chronological events that caused the situation of this Complaint; who planned, or created, or permitted, or promoted, or influenced those attacks.

Likewise, plaintiff Figueroa's trial testimony regarding Mayor Ortíz included telling expressions that also reveal the speculative and conclusory nature of the political discrimination claim against the Mayor. Examples of these appear in his direct examination:

- ". . . only a person with the political power and influence of the Mayor in the whole Western area could influence the way my family and I have been victimized and persecuted for political reasons...."

- ". . . ever since the picture of the Governor arrived that date, it is more than a coincidence that the Mayor calls Ms. Vargas and from that moment humiliation started and my life became hell because I started being summoned for interviews, summoned . . . to the District Attorney's office by District Attorney Alma Méndez...."

- ". . . the power that the Mayor back then and still has and his friendship with high-ranking officers in the Police of Puerto Rico lent itself for that."

- ". . . it was an abuse and there had to be a political hand behind this...."[5]

Regarding officer Vargas, the trial evidence established that she acted spontaneously, without being influenced or coerced into filing disciplinary and criminal charges against plaintiffs. There is no evidence that she and the other defendants fabricated these charges moved by a discriminatory animus against plaintiffs because of their political affiliation. What the evidence

---

[5] These are substantially verbatim statements of Figueroa taken from the Court's trial notes.

CIVIL 02-2848CCC                                    9

does prove is that she acted on her own and that the allegations of misconduct which she raised against plaintiffs were scrutinized at their probable cause hearing and trial as well as during the administrative disciplinary procedure, all of which were conducted within due process guarantees and legal parameters.

As to the higher echelon officers, Laboy, Gracia, Pereira and Rivera, not a scintilla of evidence was presented which showed that the actions taken by them during the disciplinary proceedings were either politically motivated or flouted plaintiffs' due process rights. Rather, the evidence established that they all acted within the exercise of the lawful functions assigned to them as investigators and/or decision-makers within the disciplinary proceedings. Laboy simply acted as the initial investigator of the incident, following the designation made by Inspector Rosado, and, in accordance with Police Department regulations. Gracia, a very high-ranking officer who held the position of Deputy Superintendent of Field Operations, made the decision to transfer Figueroa to the Ponce District on January 22, 2002 (see defendants' Exhibit H) following a second incident between Figueroa and Vargas that occurred on January 16, 2002, and which prompted Second Lieutenant Juan de J. Rivera-Ortíz to recommend that Vargas and Figueroa not be allowed to work together anymore due to concerns for their safety. (See defendants' Exhibit E.) Pereira and Rivera, in turn, made their respective decisions to expel/suspend the plaintiffs only after the conclusion of the investigation conducted at the different levels of hierarchy within the Police Department, as mandated by the regulations. There is simply no evidence that this disciplinary proceeding was trumped-up or that the decisions taken at its different stages were part of a political plot, in conspiracy with Mayor Ortíz, as plaintiffs alleged. Neither is there evidence that this disciplinary proceeding, at any of its stages, lacked the minimum procedural guarantees afforded by the Due Process Clause, as plaintiffs sustained. Quite to the contrary, the evidence demonstrated that plaintiffs were afforded notice and the opportunity for a hearing at various levels of their disciplinary proceedings, before the final

CIVIL 02-2848CCC				10

disciplinary actions were taken against them, and that, as was the case with Figueroa's transfer by Gracia due to safety concerns, that said opportunity was impracticable before the decision was taken but was duly provided afterwards.

Likewise, there is no evidence that any of the defendants exerted any pressure or influence upon Judge Rojas to obtain a desired result within the criminal process. His determination of probable cause against plaintiffs was made after a hearing at which defendants were represented by counsel. Once the judicial officer found probable cause, plaintiffs were within the bounds of legal restraints.

In sum, we have looked at all the evidence in the record, drawn all reasonable inferences therefrom in plaintiffs' favor, and resisted the temptation to weigh the evidence or make our own credibility determinations. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Correa v. Hospital San Francisco, 69 F.3d 1184, 1191 (1st Cir. 1995); Gibson v. City of Cranston, 37 F.3d, 731 (1st Cir. 1994). Still, after fifteen days of trial, plaintiffs were simply unable to prove their case against defendants. Simply put, their generalized assertions and conclusory statements, without any specific evidence supporting their political discrimination claims, are plainly insufficient to establish a causal connection between their political affiliation and the adverse employment actions alleged. See Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 8 (1st Cir. 2000). Nor were they able to show that their procedural due process rights were ever infringed. Given that the evidence, viewed from the perspective most favorable to the plaintiffs, is so one-sided that defendants are plainly entitled to judgment, for reasonable minds could not differ as to the outcome, see

CIVIL 02-2848CCC                            11

Rolón-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 (1st Cir. 1993), judgment as a matter of law under Fed.R.Civ.P. 50(a)(1) is GRANTED in favor of defendants DISMISSING plaintiffs' complaint in its entirety.  Judgment shall be entered accordingly.

    SO ORDERED.

    At San Juan, Puerto Rico, on October 31, 2005.

                                          s/CARMEN CONSUELO CEREZO
                                          United States District Judge